(C. D. 506)

Atlantic Coast Fisheries Corp. *v.* United States

## United States Customs Court, First Division

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

(Decided June 3, 1941)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiff.

*Charles D. Lawrence,* Acting Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

Before Brown and Walker, Judges

Walker, Judge: The merchandise which forms the subject of these suits against the United States consists of four kinds of oils as follows: (1) fish-liver oil mixed with soya-bean oil (protest 979956–G), (2) concentrated fish-liver oil mixed with soya-bean oil (protests 975630–G, 972965–G, 972966–G), (3) fish-liver oil mixed with sesame oil (protests 979958–G, 979959–G), and (4) plain or crude fish-liver oil (protests 979958–G, 979959–G, 992967–G). The mixed oils were assessed with duty by the collector at the rate of 25 per centum ad valorem under the provision in paragraph 57 of the Tariff Act of 1930 for—

—Combinations and mixtures of animal, vegetable, or mineral oils or of any of them * * * not specially provided for * * *.

plus 3 cents per pound under the provision in section 601 (c) (8) of the Revenue Act of 1932 as amended by section 701 of the Revenue Act of 1936, reading, so far as pertinent, as follows:

* * * fish oil * * * 3 cents per pound; * * * any article, merchandise, or combination * * * 10 per centum or more of the quantity by weight of which consists of * * * one or more of the products specified above in this paragraph * * * a tax at the rate or rates per pound equal to that proportion of the rate or rates prescribed in this paragraph * * * in respect of such product or products which the quantity by weight of the imported article, merchandise, or combination, consisting of * * * such product or products, bears to the total weight of the imported article, merchandise, or combination * * *.

The fish-liver oil without admixture was assessed with duty at the rate of 20 per centum ad valorem under the provision in paragraph 52 of the Tariff Act of 1930 for—

* * * all other animal and fish oils * * * not specially provided for * * *.

plus a tax at the rate of 3 cents per pound under the provision in the revenue act, *supra,* for—

* * * fish oil * * * whether or not refined, sulphonated, sulphated, hydrogenated, or otherwise processed * * *.

Plaintiff has abandoned all claims made in the protests save the claim that the merchandise is properly dutiable at the rate of 10 per centum ad valorem under the provision in paragraph 34 of the Tariff Act of 1930 for—

* * * drugs of vegetable or animal origin; any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture * * * *Provided*, That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: *And provided further*, That no articles containing alcohol shall be classified for duty under this paragraph.

and the claim that since the merchandise is more properly classifiable as drugs no tax is applicable under section 701 of the Revenue Act of 1936. It is noted, however, that the claim for exemption from the tax imposed under the revenue act, *supra*, was not made in protests 975630–G and 992967–G.

We will take up first the question of the classification of the oils in issue under the Tariff Act of 1930. Jay Albert Raynolds, a chemist in the employ of the plaintiff, was the only witness called. Mr. Raynolds, whose work was in connection with the production and refining of fish-liver oils and testing them for their vitamin content, testified that he was familiar with all of the oils at bar. As to the fish-liver oil mixed with soya-bean oil the witness testified that it consisted of a vitamin product containing 65,000 units of vitamin A per gram and about 1.95 per centum of free fatty acid. The latter amount was excessive and it was necessary to refine the product. The soya-bean oil, he said, is used as an agent in extracting oil from the livers and serves as a preservative of the vitamin content of the oil as well, but does not add to the value as a therapeutic agent.

Mr. Raynolds testified that the oil in question has therapeutic properties and is commonly known as a medicine or drug, being used solely because of its vitamin content; that it is a natural drug of animal origin, not compounded, not containing alcohol, and that it is inedible. In its imported condition, he said, it could not be used for any purpose but had to be refined and filtered.

The fish-liver oil mixed with sesame oil is the same as that mixed with soya-bean oil, according to the witness, the sesame oil performing the same functions in relation thereto that the soya-bean oil performs, and Mr. Raynolds stated that his testimony with relation to the fish-liver oil mixed with soya-bean oil applied with equal force to the fish-liver oil mixed with sesame oil.

The same is also true with relation to the concentrated fish-liver oil mixed with soya-bean oil, save that the product was processed to in-

crease the vitamin content, that is to say, an inert portion of the fish-liver oil was removed and thereby the concentration of the therapeutic agent, vitamin A, was proportionately increased.

The plain or crude fish-liver oil contained no other oil mixed therewith but in all other respects the testimony of the witness as to the mixed oil applied as well thereto.

In *Parke, Davis & Co.* v. *United States*, T. D. 47282, this court held certain halibut livers, shown by the testimony to be used exclusively in the production of halibut-liver oil, a medicine having preventive and curative value, to be properly classifiable as crude drugs of animal origin and entitled to free entry under paragraph 1669 of the Tariff Act of 1930. Later, in *D. C. Andrews & Co., Inc.* v. *United States*, T. D. 49190, it was held that halibut-liver oil in the condition in which it was extracted from halibut livers, requiring further treatment for the purpose of preservation and purification before being fit for medicinal use, was properly classifiable as a drug of animal origin advanced in value or condition under paragraph 34, *supra*, rather than under the provision in paragraph 52, *supra*, for fish oils not specially provided for. In *Dr. Salbro Emy* v. *United States*, 3 Cust. Ct. 437, Abstract 42416, it was held that swordfish-liver oil and tuna fish-liver oil were likewise dutiable as drugs advanced under the provisions of paragraph 34, *supra*.

In the brief filed on behalf of the defendant it is argued that, as it is necessary to refine and filter the oils in question after importation in order to use them for the purpose for which they are intended, they are not drugs in their condition as imported, citing the well-known rule that the classification of imported merchandise must be determined upon the basis of its condition as and when imported.

The statute itself defines the term "drug" as follows:

* * * the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes.

That the oils in question have therapeutic properties we believe is amply established by the record. We are satisfied that the phrase "chiefly used for medicinal purposes" does not limit the application of paragraph 34 to such drugs as are in their imported condition *ready* to be used for medicinal purposes. It will be noted that the definition states that "the term 'drug' *wherever used in this act* shall include only those substances * * * chiefly used for medicinal purposes." The term is used in paragraph 1669 of the free list referring to drugs in a crude state, obviously not ready at the time of importation to be used for medicinal purposes. Likewise, in paragraph 34, *supra*, the drugs covered thereby are such as are "advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper

packing of the drugs and the prevention of decay or deterioration" thus covering drugs which have been advanced in value or condition but which are not necessarily in their finished or highest state, ready for use for medicinal purposes. We must conclude, therefore, that the phrase "chiefly used for medicinal purposes" was intended to denote the character of the substance intended to be covered by the term "drugs" and not to limit the use of the term to such substances as are ready to be used for medicinal purposes at the time of importation without further processing.

We are of opinion that there is sufficient competent evidence in the record to warrant a finding that the oils in question are chiefly used for medicinal purposes. Witness Raynold testified that they are used solely because of their vitamin content as material for the preparation of a vitamin product. It is a matter of common knowledge of which we may take judicial notice that vitamin products prepared from fish-liver oils are used chiefly, if not always, for their curative or remedial properties, i. e., for medicinal purposes.

We therefore find that the oils in question are within the definition of the term "drugs" found in paragraph 34, *supra*. Our next inquiry must be to determine whether they meet the other requirements of that paragraph, i. e., as drugs of vegetable or animal origin, natural and uncompounded, inedible, advanced in value or condition, and not containing alcohol.

The record establishes that the oils in question are of animal origin, that they are natural products, that they are inedible, that they do not contain alcohol, and that they have been advanced in value or condition over the crude form (fish livers) by processes of extraction of the oil from the livers.

On the question of whether the oils in issue are compounded drugs, witness Raynold testified that in his understanding as a chemist the mixed oils were not compounded, and it is observed that the term "compound" is defined in Funk & Wagnalls New Standard Dictionary as follows:

1. To make by the intermingling or intimate combination of various elements or ingredients; combine or intermix so as to form a composite product, as to *compound* an ointment; a character *compounded* of good and evil qualities.

2. To mix, combine, or put together (various ingredients, elements, or parts), to form a compound substance, word, or thing; as to *compound* drugs.

Since it appears that the sesame or soya-bean oil mixed with certain of the fish-liver oil in question had no effect other than as agents assisting in the extraction of the oil from the livers and as preservatives of vitamin content of the oil so extracted, we are satisfied that the fish-liver oil so mixed was not compounded with the vegetable oils named so as to become a compounded drug excluded from classi-

fication under paragraph 34, and it is indisputable that the plain or crude fish-liver oil involved was not compounded.

We therefore find that the merchandise falls squarely within the provisions of paragraph 34, *supra*. While it is equally within the provisions of paragraph 57 or 52, under which classification was made, it will be observed that each of the paragraphs contains a "not specially provided for" limitation, and the designation "drugs" in paragraph 34 being a designation by use it prevails over one by composition. *United States* v. *Dunhill*, 13 Ct. Cust. Appls. 310, T. D. 41231.

On the record made we hold that the merchandise in issue is entitled to classification under paragraph 34, and that the collector's classification in each case was erroneous. The question next presented is the claim for exemption from the taxes imposed under the provisions of the Revenue Act of 1932 as amended.

Section 601 (a) of that act provides that—

In addition to any other tax or duty imposed by law, there shall be imposed a tax as provided in subsection (c) on every article imported into the United States unless treaty provisions of the United States otherwise provide.

Section 601 (c) (8) of that act, as amended, so far as pertinent has been set out heretofore.

With respect to the mixed oils involved it cannot be denied that they fall within the provision in said section 601 (c) (8) for—

* * * any article, merchandise, or combination * * * 10 per centum or more of the quantity by weight of which consists of * * * one or more of the products specified above in this paragraph [fish oils] * * *.

The legislative intent to tax all articles, merchandise, or combinations answering the above description is plainly manifest, and there is no ambiguity which would warrant the application of rules of construction or resort to legislative history. The same is true with respect to the plain or crude fish-liver oil here involved. It falls squarely within the provision in said section 601 (c) (8) for—

* * * fish oil * * * whether or not refined, sulphonated, sulphated, hydrogenated, or otherwise processed * * *.

and is subject to the tax imposed thereby regardless of its classification as a drug under the Tariff Act of 1930.

To recapitulate: Insofar as the protests at bar claim that the oils in question are entitled to classification under paragraph 34 of the Tariff Act of 1930 as drugs advanced, not specially provided for, and consequent assessment of duty at 10 per centum ad valorem thereon, they are sustained. Insofar as they claim exemption from the taxes imposed under the provisions of the Revenue Act of 1932 as amended, they are overruled.

Judgment will issue accordingly.