Geo. S. Bush & Co., Inc. *v.* United States (No. 4455) [1]

United States Court of Customs and Patent Appeals, June 19, 1944

*Lawrence & Tuttle* (*Frank L. Lawrence* of counsel) for appellant.

*Paul P. Rao*, Assistant Attorney General (*Sybil Phillips* and *Richard F. Weeks*, special attorneys, of counsel), for the United States.

[Oral argument April 4, 1944, by Mr. Tuttle and Mr. Weeks]

1 C. A. D. 285.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges [2]

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division.

Merchandise, consisting of dogfish-liver oil, was assessed for duty by the collector at the port of Seattle, Wash., at 10 per centum ad valorem as drugs, advanced in value, under paragraph 34 of the Tariff Act of 1930. It was also assessed with an additional tax of 1½ cents per pound, pursuant to section 601 (c) (8) of the Revenue Act of 1932 (47 Stat. 259), as amended by section 602 of the Revenue Act of 1934 (48 Stat. 762), as amended by section 701 of the Revenue Act of 1936 (49 Stat. 1742), as amended by section 702 (a) of the Revenue Act of 1938 (52 Stat. 568) 26 U. S. C. §§ 2490, 2491, and 2493, as modified by the trade agreement with Canada, January 1, 1939 (T. D. 49752, 74 Treas. Dec. 251).

The importer protested, claiming that the merchandise was free of duty as a crude drug, not advanced in value or condition, under paragraph 1669 of the Tariff Act of 1930, and that as it was a crude drug, it was not subject to the internal revenue tax.

Paragraph 34, which provides for drugs advanced in value, reads:

PAR. 34. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem: *Provided*, That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: *And provided further*, That no article containing alcohol shall be classified for duty under this paragraph.

Paragraph 1669 is substantially the same as paragraph 34, *supra*, except that it provides for drugs in a "crude state, not advanced in value or condition" by any process beyond that essential to the proper packing of such drugs to prevent deterioration pending manufacture.

Section 2490 and the pertinent parts of sections 2491 and 2493, *supra*, read:

§2490. IMPOSITION OF TAX

*In addition to any other tax or duty imposed by law*, there shall be imposed upon the following articles imported into the United States, unless treaty provisions of

---

[2] LENROOT, Judge, sat during the argument of this case, but resigned before the opinion was prepared.

the United States otherwise provide, a tax at the rates set forth in section 2491, to be paid by the importer. 53 Stat. 267. [Italics ours.]

§2491. RATE OF TAX

(a) Whale oil (except sperm oil), fish oil (except cod oil, cod-liver oil, and halibut-liver oil), marine-animal oil, tallow, inedible animal oils, inedible animal fats, inedible animal greases, fatty acids derived from any of the foregoing, and salts of any of the foregoing; all the foregoing, *whether or not refined, sulphonated, sulphated, hydrogenated, or otherwise processed, 3 cents per pound*: * * *. [Italics ours.]

§2493. ASSESSMENT AND PAYMENT

The tax imposed under section 2490 shall be levied, assessed, collected, and paid in the same manner, as a duty imposed by the Tariff Act of 1930, and shall be treated for the purposes of all provisions of law relating to the customs revenue as a *duty imposed by such Act*, except that—

(1) the value on which such tax shall be based shall be the sum of (A) the dutiable value (under section 503 of such Act) of the article, plus (B) the customs duties, if any, imposed thereon under any provision of law; * * *. [Italics ours.]

It appears from the testimony of record that the merchandise was produced by "macerating" fresh dogfish livers and treating them with live steam for a period of from 30 to 45 minutes; that such processing separated some, but not all, of the oil from the livers; that the material was allowed to flow off into tanks where it was subjected to a centrifugal separator which delivered the oil, the solids, and the water out of separate spouts; that the oil so separated was not entirely free from either water or solids and was subjected to a "higher speed centrifuge known as a purifier"; and that the oil delivered from the "purifier" was 99 per centum pure. It further appears that the sludge or solid matter which remained after the oil was obtained from the livers was of no value and was discharged into the ocean.

The involved oil, according to the record, was subjected to no processing other than that set forth.

The witness Charles Roy Elsey, the only witness called by the importer, stated that he was in charge of the research department of the East Bay Fisheries, Inc., packers of fish and oil manufactured in Vancouver, British Columbia, and that he was a biologist and a biochemist in charge of shellfish research. He described, in more detail, the process hereinbefore set forth, and stated that it had but one purpose—that of removing the oil from the livers—and that his company had been processing dogfish livers in that manner for 2 years. (His testimony was submitted November 12, 1941.) The witness also stated that dogfish-liver oil is used for its vitamin content; that to some extent it is used for the same purpose as halibut-liver oil and cod-liver oil; that "Most of it however is used for veterinary purposes rather than pharmaceutical. Recently, however, *considerable quantities are being treated in such a way that it is suitable for pharmaceutical purposes as well.*" [Italics ours.]

But one witness, Lyle Edward Branchflower, was called by the Government. He testified that he was employed by W. J. Lake Co., manufacturer of byproducts; that he was familiar with the process of extracting oil from dogfish livers as hereinbefore set forth; that the process used by his company was very similar to that described by the importer's witness Dr. Elsey; that his company had been obtaining oil from fish livers since about 1935, at which time dogfish-liver oil was not of sufficiently high vitamin potency to be sold to the pharmaceutical trade; and that in the fall of 1937 and the spring of 1938 his company sold some of its dogfish-liver oil to the Distillate Products Co. of New York, which company was connected with Eastman Kodak Co. and General Mills. The witness further stated that the Distillate Products Co. used the oil to "fortify vitamin concentrated oils," and that the only other outlet he knew for dogfish-liver oil was as stock feed, that is, it is sold to feed manufacturers to fortify their feed with oils containing vitamins. When asked how the dogfish-liver oil sold by his company was chiefly used, he said its uses varied in different periods; that all of it might be used during a certain period to fortify poultry and other foods, such as oleomargarine, or it might be sold to the Distillate Products Co. The witness stated that he was not qualified to testify that the oil produced by his company was a drug. He said that the price at which the oil sold depended on its vitamin potency.

The trial court considered the evidence of record and several cases relied upon by counsel for the importer, and held that dogfish livers were crude drugs, and that the oil obtained therefrom, having a vitamin potency, was a drug, advanced in value, and was properly assessed by the collector under paragraph 34, *supra*. Relative to the claim in the protest that the merchandise was not subject to the internal revenue tax of 1½ cents per pound, the court stated that that claim was neither stressed at the trial nor argued in the brief of counsel. However, on the basis of its decision in *Atlantic Coast Fisheries Corp.* v. *United States*, 6 Cust. Ct. 415, C. D. 506, wherein it was held that fish-liver oil was subject to the revenue tax, notwithstanding its tariff classification as a drug advanced in condition, the court held that the involved dogfish-liver oil was subject to the tax of 1½ cents per pound provided in section 601 (c) (8) of the Revenue Act of 1932, as amended as hereinbefore set forth, as modified by the Canadian Trade Agreement.

It is contended here by counsel for appellant that the involved dogfish-liver oil is a crude drug, and is, therefore, free of duty under paragraph 1669, *supra*. However, there is no evidence of record to support that contention.

The collector classified the involved dogfish-liver oil as drugs, advanced in value or condition. Accordingly, he must have found

that the dogfish livers from which it was produced were natural uncompounded drugs and not edible; that the dogfish livers were subjected to the process hereinbefore set forth in order to obtain the oil therefrom; and that such dogfish-liver oil had therapeutic or medicinal properties and was chiefly used for medicinal purposes, otherwise he could not have assessed the merchandise as drugs, advanced in value or condition, under paragraph 34, *supra*. (It may be said in this connection that in paragraph 1669 of the Canadian Trade Agreement fish livers are referred to as crude drugs of animal origin.)

No evidence was offered by counsel for appellant to overcome the presumption of correctness attending the collector's classification. On the contrary, it clearly appears from the evidence of record that dogfish-liver oil is bought and sold for its vitamin content, and is priced according to its vitamin potency.

We are of opinion, therefore, that the collector's classification of the involved dogfish-liver oil as drugs, advanced in value or condition, has not been overcome by the evidence of record.

Counsel for appellant contend, however, that the sole purpose of treating dogfish livers was to get the oil by itself; that the oil has not been processed since it was obtained; and that, therefore, it is not a drug, advanced in value or condition, but is a crude drug and free of duty under paragraph 1669, *supra*.

In support of their contention, counsel rely upon the decision of this court in the case of *United States* v. *Sheldon*, 2 Ct. Cust. Appls. 485, T. D. 32245, where it was held, in substance, that imported gum resin was not advanced in value or condition; that it was the product of treating oleoresin or crude turpentine in order to secure the gum resin in its crude state; and that the process to which the oleoresin or crude turpentine was subjected was merely for the purpose of getting the resin by itself, and to free it from certain impurities, such as chips, bark, insects, and dirt accumulated in taking the turpentine from the tree.

Counsel also cite many other of this court's cases where the principle announced in the *Sheldon* case, *supra*, has been followed. However, for the reasons hereinbefore stated, we think it is clear that the principle announced in the *Sheldon* case, *supra*, has no application to the issues here involved.

We come now to a consideration of the issue raised by counsel for appellant that the involved merchandise is not subject to the tax or duty of 1½ cents per pound provided in section 601 (c) (8), as amended *supra*, as modified by the trade agreement with Canada.

It is well settled that the tax imposed by the revenue act, in accordance with section 601 (c) (8), *supra*, is a tariff duty and is amendatory of the Tariff Act of 1930. Section 2490, *supra*, clearly so provides. See *United States* v. *Mitsui & Co., Ltd.*. 29 C. C. P. A. (Customs) 154,

C. A. D. 185, and *United States* v. *Wecoline Products Corp.*, 29 C. C. P. A. (Customs) 161, C. A. D. 186.

Counsel for appellant state in their brief that "Concretely, appellant's position is that medicinal fish oils are not liable to import tax, but that other fish oils which are dutiable as such under paragraph 52 are so liable."

As we understand it, it is the view of counsel that the Tariff Act of 1930, as amended by section 601 (c) (8), *supra*, as modified by the trade agreement with Canada, does not apply to drugs advanced in condition or to crude drugs, because of the canon of statutory construction that a later statute, general in terms and not expressly repealing a prior special statute, does not affect the narrower provisions of the earlier statute, as stated in the cases of *United States* v. *Mitsui & Co., Ltd., supra*, and *United States* v. *Wecoline Products Corp., supra*, and that the provision of section 2491, *supra*, is general in scope and, therefore, was not intended to modify the drug provisions contained in paragraphs 34 and 1669, *supra*.

It is sufficient to say, in answer to that argument of counsel, that section 2490, *supra*, provides specifically that the duties or tax provided in section 2491, *supra*, shall be "In addition to any other tax or duty imposed by law," and that section 2491, *supra*, provides for whale oil and fish oil, "whether or not refined, sulphonated, sulphated, hydrogenated, or otherwise processed" at 3 cents per pound. So that, although the provisions for drugs, advanced in value or condition, contained in paragraph 34, *supra*, cover articles according to the use to which they are put and are, therefore, more specific for merchandise like that here involved than is the provision for fish oils, contained in paragraph 52 of the Tariff Act of 1930, nevertheless, it is clear from the provisions of sections 2490, 2491, and 2493, *supra*, that it was the purpose of the Congress to provide an additional tax or duty on all fish oil, *except cod oil, cod-liver oil, and halibut-liver oil*, regardless of the purpose for which it was used, and whether or not advanced in value or condition. Having deliberately excepted cod oil, cod-liver oil, and halibut-liver oil from the provisions of section 2491, *supra*, we think it is clear that the Congress did not intend to except from the operation of that section fish oils other than those expressly excepted therefrom. We are confirmed in this conclusion by statements made by Senator Reed, who was in charge of the bill which became the Revenue Act of 1934, during the debate on the question of excepting cod oil, cod-liver oil, and halibut-liver oil from the tax. See 78 Cong. Rec. Part 6, pages 6390–6392. Those statements need not be set forth here.

We are of opinion that it was the purpose of the Congress to provide an additional tax or duty on all fish oil, except those specially excepted from the operation of section 2491, *supra*, regardless of the

use to which the oil might be put. Such a provision, of course, includes fish oils used as drugs, whether crude or advanced in value or condition.

It is true that paragraph 34, *supra*, which provides for drugs, advanced in value or condition, is not specifically named in the trade agreement and that paragraph 52 of the Tariff Act of 1930 is specifically named therein, and that the regular rate of duty provided in the latter paragraph is reduced on shark-liver oil and oil produced from sharks known as dogfish from 20 per centum ad valorem to 10 per centum ad valorem—the same rate of duty provided in paragraph 34, *supra*. However, it is interesting to note that it is provided in schedule II of the trade agreement that—

In the case of any article enumerated in this schedule, which is subject on the day of the signature of this agreement to any additional or separate ordinary customs duty, whether or not imposed under the statutory provision noted in the column at the left of the respective description of the article, such separate or additional duty shall continue in force, subject to any reduction indicated in this schedule or hereafter provided for, until terminated in accordance with law, but shall not be increased.

See also article VII of the trade agreement.

We have carefully considered all of the arguments presented here by counsel for appellant, but are of opinion that the dogfish-liver oil here involved is subject to the additional duty provided in section 601 (c) (8), *supra*, as amended by the trade agreement with Canada, which reduced the tax on "shark oil and shark-liver oil, including oil produced from sharks known as dogfish," from 3 cents per pound to 1½ cents per pound.

For the reasons stated, the judgment of the United States Customs Court is *affirmed*.