(C. D. 949)

Geo. S. Bush & Co., Inc. | Robert E. Landweer } *v.* United States

## United States Customs Court, First Division

(Decided September 19, 1945)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney); for the defendant.

Before OLIVER and COLE, Judges

COLE, Judge: *Geo. S. Bush & Co., Inc.* v. *United States*, 10 Cust. Ct. 313, C. D. 773, affirmed in *same* v. *same*, 32 C. C. P. A. 56, C. A. D. 285, held dogfish-liver oil to be a drug, advanced in value or condition, paragraph 34 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 34), dutiable at 10 per centum ad valorem, as assessed by the collector, and not a crude drug entitled to free entry under paragraph 1669 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1201, par. 1669), as the importer had claimed. The merchandise was also held to be subject to an internal revenue tax of 1½ cents per pound assessed by the collector under the provisions of section 601 (c) (8) of the Revenue Act of 1932 (47 Stat. 259), as amended by section 602 of the Revenue Act of 1934 (48 Stat. 762), as amended by section 701 of the Revenue Act of 1936 (49 Stat. 1742), as amended by section 702 (a) of the Revenue Act of 1938 (26 U. S. C. 1940 ed. § 2490, 2491, and 2493), as modified by the trade agreement with Canada, January 1, 1939, 74 Treas. Dec. 251, T. D. 49752.

The merchandise in question is identical with that involved in the *Bush* case, *supra*, the assessments in the present case being the same as those made in the cited one. Here, however, plaintiffs concede the application of the internal revenue tax under section 601 (c) (8), *supra*, as held in the previous case. But acceptance of the statutory construction adopted in that case is limited to the internal revenue assessment, for here, as there, plaintiffs contend for classification as a crude drug under paragraph 1669, *supra*. The basis for such claim is set forth in counsel's brief as follows:

(1) The source of this oil, dogfish livers, is not drugs. Therefore it is claimed that the oil, being in its crudest form, is a crude drug.

(2) If the livers should be considered to be drugs, the liver oil is nevertheless a "crude" drug because, in the words of paragraph 1669, it has not been:

\* \* \* advanced in value or condition \* \* \* beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture.

(3) The oil is the crudest form in which the drug element (vitamins) can be imported, exportation of the livers from Canada being prohibited.

On motion of defendant, and with consent of plaintiff, the record in the *Bush* case, *supra*, was incorporated herein. In addition, plaintiff introduced oral testimony of five witnesses as well as an exhibit of

dogfish livers (illustrative exhibit A) and one of viscera (illustrative exhibit B)—both sources of vitamin A—and copies of official communications relating to tariff classification of cod-liver oil (collective illustrative exhibit C).

Much, if not all, of the competent evidence, concerning the method pursued in acquiring the oil in question and the procedure followed in exporting it to this country, was offered by Dr. Charles Roy Elsey, a qualified biologist and biochemist employed by the British Columbia Packers, Ltd., of Vancouver, B. C., exporter of the instant merchandise. It proves that: Dogfish livers are purchased direct from fishermen, delivery being made either in 4-gallon cans or 400-pound drums, depending on the distance from which they are sent; the small containers are used for short hauls to the rendering plant; the large drums, carrying a preservative for the livers, are employed for long distances; the sole purpose of obtaining dogfish livers is to extract the oil from them; the oil is rich in vitamin A, and is valued according to the number of biological units in its vitamin content; vitamin A is the desired therapeutic substance as expressed by the witness in this statement "We don't sell oil; we sell Vitamin A, and it is incidental that it happens to be dissolved in oil"; and there is no known method for exporting the valuable vitamin found in dogfish livers, without decay or deterioration, except in the form of oil. Answering a question on cross-examination as to whether the vitamin potency could not be maintained by steaming the livers to a definite temperature and shipping them in airtight cans, the witness stated "Do you know how much you would have to cook them? You would have to cook them for 80 minutes at 240° to keep them indefinitely in sealed tins, and that would destroy a large portion of the vitamin content."

Further testimony by Dr. Elsey can be summarized thus: To obtain the best quality and highest potency of dogfish-liver oil, it is necessary to process the livers as soon as possible after their removal from the carcass, which the Canadian exporter does in the following manner. The livers are macerated through a gear pump. This process is followed because it requires less mechanical cooking with a consequent saving of vitamin content. The macerated material is passed through a series of five settling or rendering tanks which subject it to heat treatment, breaking down the tissue and resulting in partial separation of the oil from the livers. Through a process of fractionation by gravity, the overflow from each tank passes to the next, and from the last tank in the series the material is carried into a sludging machine which "effects a three-phase gravity separation, delivering the oil out of one spout, the solids out of another, and the water out of another spout." The operation was described as a "settling system of gravitation." Real separation is finally accom-

plished by means of a high-speed centrifugally operated purifier which delivers a product that is 99 per centum pure oil, the imported commodity. The residue has no value and is discharged into the ocean. The entire process is merely a physical separation of the oil from solids and water. The oil is subjected to no further treatment but is exported "exactly as it comes from the centrifuge and purifier." As the oil is received after such treatment, the therapeutic value of the vitamin content is no greater than when the vitamin A was imbedded in the natural livers. The oil is used for veterinary and pharmaceutical purposes, the latter use having greatly increased since processing for vitamin content was developed.

The attempt to show a prohibition on the exportation of dogfish livers from Canada is not effective, the witness admitting that no embargo exists, yet unable to give any reason why export permits have not been issued since "somewhere in 1942 or 1941, around there" to firms desiring to export the commodity. In the absence of competent proof, adequately explaining the attitude of the Canadian Government, plaintiff's contention on this point cannot be upheld.

Most of counsel's examination of the witness, Kniseley, a chemist with 19 years' experience as a commercial analyst and consultant in chemical work, was directed toward obtaining an expression to the effect that dogfish livers are not drugs within the meaning of that term as set forth in the Federal Food, Drug, and Cosmetic Act (21 U. S. C. 1940 ed. § 321). For the purposes of the present case, however, the tariff definition of a "drug," paragraph 34, *supra*, is sufficient and controlling. This witness' opinion that dogfish livers, *per se*, are not used for medicinal purposes is regarded merely as an expression that they are not edible. The statement is not accepted as a contradiction of previous testimony, establishing that the only purpose of dogfish livers is to supply the therapeutic substance, vitamin A, ultimately dissolved in oil.

Defendant offered no proof to rebut plaintiff's additional evidence, the contention of Government counsel being that plaintiff "furnished no additional facts which should cause this court to arrive at a decision different from that in the incorporated case," and that "the principle of *stare decisis* should prevail."

The incorporated case was presented on the theory that the processing of dogfish livers merely brought the oil by itself and did not advance the drug beyond a crude state. It was held that the doctrine sought to be invoked had no application, but in overruling the protest the appellate court stated that "the collector's classification of the involved dogfish-liver oil as drugs, advanced in value or condition, has not been overcome by the evidence of record." In the previous case, plaintiff's proof was confined entirely to showing how the oil was acquired from the dogfish livers.

The present case is based on a different legal premise and in support thereof additional facts, not disclosed in the incorporated case, have been presented. The principle of *stare decisis*, therefore, does not apply.

The record herein is conclusive that dogfish livers and the oil extracted therefrom are drugs within the tariff meaning of the term. Each possesses therapeutic properties and is chiefly, if not exclusively, used for medicinal purposes. The desirable substance, vitamin A, in both, has no greater therapeutic value, whether imbedded in the livers or dissolved in oil.

Dogfish livers are natural, uncompounded drugs of animal origin. They are inedible and possess therapeutic properties in crudest form. They specifically meet all requirements for merchandise provided for in paragraph 1669, *supra*. This conclusion not only gives recognition to the provisions of said paragraph 1669, as modified by the Canadian Trade Agreement, T. D. 49752, *supra*, wherein fish livers are referred to as crude drugs of animal origin, but it also supports judicial interpretation to the same effect. *Parke, Davis & Co. v. United States*, 66 Treas. Dec. 304, T. D. 47282; *E. R. Squibb & Sons v. United States*, 69 Treas. Dec. 1333, Abstract 34350.

*F. W. Myers v. United States*, 29 C. C. P. A. 30, C. A. D. 167, cited by plaintiffs as favorable to their position, has no bearing on the present case. The imported beef livers involved in that case were found to be edible and therefore specifically excluded from tariff classification as drugs.

Dogfish-liver oil, the imported product in question containing the medicinal properties inherent to dogfish livers, is an advanced commodity. Crushing the livers to destruction and subsequently applying heating and purifying processes to the macerated material removed the therapeutic substance, vitamin A, from its crude state into an advanced condition.

*Atlantic Coast Fisheries Corp. v. United States*, 6 Cust. Ct. 415, C. D. 506; *D. C. Andrews & Co., Inc. v. United States*, 72 Treas. Dec. 383, T. D. 49190, and *Dr. Salbro Emy v. United States*, 3 Cust. Ct. 437, Abstract 42416, held fish oils to be classifiable as advanced drugs, paragraph 34, *supra*, but in none of those cases was the question raised that plaintiffs present here, in claiming that processing the dogfish livers was "essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture," and therefore, under that clear and unambiguous language included in paragraph 1669, *supra*, the work done in the Canadian exporter's rendering plant does not remove the oil from the classification applicable to the livers, as crude drugs.

*Vandegrift & Co. v. United States*, 13 Ct. Cust. Appls. 30, T. D. 40865, had a similar question. In that case, the merchandise consisted of glands and different organs of cattle, which the court found

to be "natural, uncompounded, nonedible drugs of animal origin." Testimony disclosed that the fresh gland in frozen condition could not be shipped because of lack of adequate refrigerating space; and that the dried gland, when preserved with boric acid lost its "more active principles," and "that the only practical method of transporting the crude drug containing the active principles desired, is by drying and grinding the glands and transporting the dried glands in powdered form," which was the condition in which the merchandise under consideration had been imported. On the basis of such record, the court held that drying and grinding were processes of preparation essential to the prevention of decay or deterioration pending manufacture.

*Judson Sheldon Corporation* v. *United States*, 13 Cust. Ct. 65, C. D. 871 (pending before the United States Court of Customs and Patent Appeals, Suit 4507), is also in point. There, beef-liver extract was held to be classifiable as a crude drug, from a set of facts showing that it was wholly impractical to ship the beef livers and that the imported merchandise was "the only feasible form in which the desired therapeutic properties of Brazilian beef livers can be obtained."

The situation in the present case is analogous to those involved in the *Vandegrift* and *Judson Sheldon Corporation* cases, *supra*. Here, the proof shows that there is no known way of shipping the natural dogfish livers without attendant decay or deterioration and consequent loss of vitamin A; that cooking the livers for preservation during the period of transportation would "destroy a large portion of the vitamin content"; and that macerating the livers to acquire the imported oil "saves vitamin content." These facts, established by plaintiffs' uncontradicted testimony, were not before us in the incorporated case. They are not disturbed by the doubt expressed in the witness' statement to the effect that he did not know whether the extent of deterioration, in shipping the livers, would be so great as to remove them from a commercial possibility.

The record before us is satisfying that removing of the vitamin content from dogfish livers and dissolving it in oil did not advance the drug in value or condition beyond that contemplated by paragraph 1669, *supra*. Accordingly, we hold the dogfish-liver oil in question to be entitled to free entry under paragraph 1669, as a crude drug, subject only to the internal revenue tax of 1½ cents per pound, assessed by the collector under section 601 (c) (8), *supra*.

To the extent indicated the protests are sustained and judgment will be rendered accordingly.