**No. 53576.**—Robert E. Landweer v. United States, protests 128174–K and 130853–K·(Seattle).

Mollison, Judge:   The protests involved in this case were consolidated for trial and disposition.   The plaintiff seeks to recover part of the duty paid upon the importation of certain small boats.   Duty was levied thereon by the collector of customs at the rate of 33⅓ per centum ad valorem under the provision in paragraph 412 of the Tariff Act of 1930 for "manufactures of wood * * * or of which wood * * * is the component material of chief value, not specially provided for."   The claim in each of the protests is for duty at the rate of 15 per centum ad valorem under the provision in paragraph 370 of the same act, as modified by the Canadian Trade Agreement, T. D. 49752, for "motorboats," and by timely amendment each protest claims the same rate of duty, 15 per centum ad valorem, under the provision in the same paragraph, as amended by the said trade agreement, for "parts of the foregoing."   We note, in passing, that the Canadian Trade Agreement did not relate to parts of motorboats.

It appears that the boats in question were of molded plywood construction, some 9 feet long and some 7 feet, 10 inches long.   The general manager of the ultimate consignee, an American firm dealing in boats and their appurtenances, was called to testify on behalf of the plaintiff.   His familiarity with boats, both in an amateur and professional way, dated back to 1930, and he identified the boats here involved as dinghies for yachts.   Most of them are used, he said, by being mounted on larger vessels to be used for going ashore with passengers in shallow water, i. e., as small yacht tenders.   Those that are not so used, he said, are used as small fishing and trolling boats for pleasure fishermen.

A picture of the small boats involved was offered and received without objection as illustrative exhibit A.   Describing the boat depicted, the witness pointed out that it had a transom stern, i. e., was flat across the back, thus differing from a double-ender, which has a pointed stern, and a dory-type stern, which has con-

siderable rake-back, that is to say, the top part of the stern would protrude a foot further back than the bottom part. The boats in question, the witness said, had a rake of about an inch and a half from the top, and the transom was strengthened and braced so that an outboard motor could be attached.

On cross-examination the witness admitted that the boat was fitted with oar-locks and could be rowed, and that he had seen such boats used for rowing. However, boats designed for rowing, he said, would have the stern tapered a good deal more than the boats here involved, and he gave it as his opinion that the boats involved were "outboard" boats.

Counsel for the plaintiff has cited the decision of this court in the case of *A. W. Fenton Co.* v. *United States*, 15 Cust. Ct. 200, C. D. 972, involving a boat made of red cedar, varnished, 13 feet long and 50 inches wide, with three seats, a round bottom, and equipped with oarlocks. It appears that the said boat likewise had a transom stern designed for use with an outboard motor and was customarily so used, although it could be rowed.

In the decision in that case, we referred to the statutory definition of the term "motor boat" as found in paragraph 370 as originally enacted, and to page 3–44 of the volume II of the digest of information concerning products upon which concessions were granted by the United States in the trade agreement with Canada, published by the United States Tariff Commission, and concluded that the boat involved fell within the comprehensive definition of the term "motorboat" contained in paragraph 370, as amended.

We think the law applicable and the reasoning in that case apply equally to the situation in the case at bar. Judgment will therefore issue sustaining the claim made in each of the protests for duty at the rate of 15 per centum ad valorem under paragraph 370 of the Tariff Act of 1930, as amended.

DISSENTING OPINION ON JURISDICTIONAL GROUNDS

Cole, Judge: This case relates to entries made at Seattle, Wash. The protests never appeared on any calendar of the first division, but were heard and submitted at the port of entry before a single judge on circuit, who was assigned to hear and determine them under an authorization issued by the chief judge pursuant to law, 28 U. S. C. (1948 revision) § 254, as amended by Public Law 72, 81st Cong., 1st sess., sec. 66 (formerly section 518 of the Tariff Act of 1930, 28 U. S. C. 1946 ed. § 296).

My position on the matter of jurisdiction of a trial judge on circuit has been expressed in several recent releases. *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, *Fuchs Shoe Corp.* v. *United States*, 22 Cust. Ct. 338, Abstract 53250, and *W. R. Zanes & Co.* v. *United States*, 22 Cust. Ct. 339, Abstract 53251.

For my reasons set forth in the cited cases, I dissent from the procedure followed by the majority, accepting the case as one over which the first division has jurisdiction, and hold that the case should be decided by the trial judge before whom it was submitted.