(C. D. 1192)

CONSOLIDATED WATER POWER & PAPER COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 22, 1949)

*McCabe, Gruber, Clure, Donovan & Crassweller* and *Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Arthur M. Clure* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before LAWRENCE and FORD, Judges; RAO, J., not participating

LAWRENCE, Judge: The subject of this controversy is described on the consular invoice as follows:

> 26 ft. Steelcraft gasoline winch boat,
> 20 HP engine, spare propeller and shaft.

The boat was manufactured by Russell Bros., Ltd., Owen Sound, Ontario. From that point it was transported by rail and truck to Sugar Loaf Bay, Minn. Entry was made at Pigeon River Bridge, Minn., a subport of the district of Duluth.

The collector of customs assessed duty upon the boat at the rate of 45 per centum ad valorem as provided in paragraph 397 of the Tariff Act of 1930 for "Articles or wares not specially provided for" composed wholly or in chief value of steel.

Plaintiff relies upon the claim in the amended pleadings that the boat is a "vessel" as described in Title 1, United States Code, sec. 3 (R. S. § 3), and should accordingly be granted freedom from duty.

Section 3 of the code, *supra*, reads as follows:

**§ 3. "Vessel" as including all means of water transportation.**

The word "vessel" includes every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water. (R. S. § 3.)

While no specific reason is assigned for the classification of the article in paragraph 397, *supra*, beyond the fact that the boat was in chief value of steel, the collector of customs points out in a report filed with the papers that the boat is excluded from classification in paragraph 370 of the Tariff Act of 1930, which was modified by the trade agreement between the United States and Canada, effective January 1, 1939 (74 Treas. Dec. 235, T. D. 49752), apparently upon the ground that the boat "was intended to be used in trade or commerce." Said paragraph 370, as modified, upon which plaintiff originally relied for classification, reads as follows:

Motorboats, including yachts or pleasure boats, whether sail, steam, or motor propelled, valued at not more than $15,000 each_____ 15% ad val.

It is clear, however, from the brief filed by plaintiff that reliance is placed upon the claim for free entry of the boat pursuant to section 3 of the United States Code, *supra*.

Mr. Charles Lee Cecil, manager of the Minnesota Timber Division of the Consolidated Water Power & Paper Company, the plaintiff herein, was the only witness who testified in the case.

This witness, who appears to have been well informed upon the subject of this controversy, testified that his company is engaged in the manufacture of paper and allied products, having mills at various points in Wisconsin; that the raw material (pulpwood in the form of logs 8 feet in length) supplied to these mills is obtained in the State of Minnesota from standing timber; that after the wood is taken from the forest it is skidded to a road suitable for trucks and then transported to the north shore of Lake Superior; that at this point the wood is concentrated in large rafts for transportation by water to Ashland, Wis., which is on the south shore of Lake Superior. To accomplish this purpose, the pulpwood is formed into a large boom, consisting of a chain or barrier of floating logs which retains the pulpwood within it. It seems that formerly the company used small boats or so-called bateaux "to transfer the wood in smaller lots out to where the large boom is strung, so that the large boat can take it from there, much the same as a switch engine concentrates cars for an over-the-road haul." These small boats, being of shallow draft, are equipped to come in close to the shore and pick up material to be placed in the boom which is later drawn by larger boats across the lake.

The witness stated that in 1946 his concern ordered the boat here under consideration for the purpose of conducting the operations formerly carried on by the bateaux.

It appears from the evidence submitted at the trial that the imported boat mounts a winch forward having 1,700 feet of one-half inch cable in order to "use the winch power in addition to the propeller, which constitutes the motive power proper of the boat."

The record discloses that after the boat was manufactured at Owen Sound, Ontario, it was watered there and launched "for trim and tightness of the wells, and so on, and for fitting out," and the reason it was transported by rail and truck to Sugar Loaf Bay was for economy of transportation; that while it might have been run down under its own power, it would require a 4-man crew—a captain, engineer, and two deck hands.

No evidence was presented on behalf of the Government and there is a letter in the record to the effect that it "does not desire to file a brief on behalf of the United States in the above-entitled case."

Subsequently, the submission of the case was set aside and the following stipulation was filed with the court:

It is hereby stipulated and agreed between the attorneys for the parties hereto, as follows:

That the spare propeller and shaft in the case at bar were necessary spare parts for the boat involved in this case and were part of the equipment of said boat.

That this case is hereby resubmitted upon this stipulation and the record heretofore made.

The theory upon which plaintiff rests its claim for free entry derives from the decision of the Supreme Court of the United States in the case of *The Conqueror*, 166 U. S. 110, in which the fundamental rule was stated that vessels are *sui generis* and hence distinguished from "articles" and "goods, wares, and merchandise" imported from foreign countries, as used in a tariff sense.

So far as pertinent to the issue herein, the rule of *The Conqueror* case, *supra*, still prevails except to the extent that it has been modified by the Tariff Acts of 1922 and 1930. Paragraph 370 of the Tariff Act of 1922 provided for—

Airplanes, hydroplanes, motor boats, and parts of the foregoing,

on which duty at the rate of 30 per centum ad valorem was imposed. A like provision was carried over into the Tariff Act of 1930, supplemented by the following:

* * * The term "motor boat," when used in this Act, includes a yacht or pleasure boat, regardless of length or tonnage, whether sail, steam, or motor propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yacht or boat is brought into the United States under its own power, but does not include a yacht or boat used or intended to be used in trade or commerce, nor a yacht or boat built, or for the building of which a contract was entered into, prior to December 1, 1927.

In the case of *The International*, 89 Fed. 484, the Circuit Court of Appeals for the Third Circuit held that a steam dredge and scows used in connection therewith were vessels within the meaning of section 3 of the Revised Statutes, *supra*, even though the dredge was not intended or adapted for the carriage of merchandise or passengers

and did not possess the power of self-propulsion. This case was subsequently referred to with apparent approval by the Supreme Court of the United States in *Ellis* v. *United States*, 206 U. S. 246, 259.

It seems that although section 3, *supra*, defines a "vessel" as a water craft "used, or capable of being used, as a means of transportation on water," the quoted words have been rather broadly interpreted to include a variety of water craft, whether or not designed for the temporary transportation of merchandise or used merely to carry a permanent cargo, as for instance, a bathhouse built on boats, designed to float, to uphold, and to transport the bathhouse wherever and whenever desired, *The Public Bath No. 13* (D. C.), 61 Fed. 692. So also a pumpboat was held to be a "vessel" within the meaning of section 3, *supra*, even though the things to be transported were not temporarily aboard the structure but were permanently a part of it, *Charles Barnes Co.* v. *One Dredge Boat et al.*, 169 Fed. 895. Dredges themselves have likewise been held to be "vessels" within the meaning of said section 3, *Saylor* v. *Taylor*, 77 Fed. 476.

It logically follows that a boat of the description here under consideration is a "vessel."

Plaintiff suggests in its brief the possibility that the boat may have been classified as merchandise because it did not come from Canada to the United States under its own power but instead came by rail and truck. The record is silent on that point and we cannot assume that to be the reason in view of the decision in *Thornley & Pitt* v. *United States*, 18 C. C. P. A. (Customs) 265, T. D. 44428. In that case two pleasure sailing yachts were imported into the United States. Both boats were brought to this country on board of steamers. The boats were carried on deck and the spars, sails, and other equipment, packed in cases, were carried in the hold. The classification of the importations by the collector of customs as manufactures of wood in paragraph 410 of the Tariff Act of 1922 was reversed on appeal and the claim of the plaintiff therein to the effect that the articles were "vessels" within the meaning of section 3 of the Revised Statutes and not subject to duty under any provision of the tariff act was sustained. Of like effect was the case of *Thornley & Pitt* v. *United States*, 60 Treas. Dec. 433, T. D. 45125.

As to the spare propeller and shaft in the case before us, since it is uncontroverted that said articles are part of the equipment of the winch boat in issue, it would appear that the cases of *The Conqueror*, *supra*, and *Canadian National Steamship. Co., Ltd.* v. *United States*, 29 C. C. P. A. (Customs) 123, C. A. D. 180, are controlling. In the latter case, our appellate court stated:

In the *Conqueror* case, *supra*, after holding the vessel to be free of duty, the court made the following statement:

Vessels certainly have not been treated as dutiable articles, but rather as the vehicles of such articles, and though foreign built and foreign owned,

are never charged with duties when entering our ports, though every article upon them, that is not a part of the vessel or of its equipment or provisions, is subject to duty, unless expressly exempted by law.   *   *   *

. It would seem to logically follow that if the vessel itself does not constitute dutiable merchandise, any part of the vessel, such as that at bar, should also be regarded as nondutiable merchandise.

We are clearly of the opinion in view of the authorities cited, *supra*, that the claim of plaintiff is well founded.

We accordingly hold that the boat in controversy, together with the spare propeller and shaft, should be granted freedom from duty pursuant to section 3 of Title 1, United States Code, and the decision of the collector of customs as to said merchandise is reversed.

Judgment will be entered in harmony with the views above expressed.