(C.D. 2739)

THE NEWMAN COMPANY *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 28, 1966)

*Glad & Tuttle* (*Edward N. Glad* and *Robert Glenn White* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Glenn E. Harris*, trial attorney,) for the defendant.

Before OLIVER, NICHOLS, and WATSON, Judges; OLIVER, J., concurring

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, consists of pneumatic or inflatable rubber boats with motor mounts, but no motors, imported from Japan in 1962 and 1963.[1] They were assessed with duty at 12½ per centum ad valorem under paragraph 1537(b) of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865 and T.D. 53877, as manufactures wholly or in chief value of gutta percha or india rubber, not specially provided for. It is claimed that they are properly dutiable at 5 per centum ad valorem under paragraph 370, as modified by T.D. 55615, as motor boats.

The pertinent provisions of the tariff act, or said act, as modified, are as follows:

Paragraph 1537(b), as modified by T.D. 53865 and T.D. 53877:

Manufactures of india rubber or gutta percha, or of which these substances or either of them is the component material of chief value, not specially provided for (except * * *):

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other_____ 12½% ad val.

Paragraph 370:

Airplanes, hydroplanes, motor boats, and parts of the foregoing, 30 per centum ad valorem. The term "motor boat," when used in this Act, includes a yacht or pleasure boat, regardless of length or tonnage, whether sail, steam, or motor propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yacht or boat is brought into the United States under its own power, but does not include a yacht or boat used or intended to be used in trade or commerce, nor a yacht or boat built, or for the building of which a contract was entered into, prior to December 1, 1927.

---

[1] This case was heard by and submitted before Judge Wilson at Los Angeles on March 9, 1965. Plaintiff's brief was filed on December 27, 1965, and defendant's brief was filed on February 25, 1966. This case was resubmitted before the First Division as presently constituted on May 9, 1966.

Paragraph 370, as modified by T.D. 55615:
Motor boats:
Valued not over $15,000 each_____ 5% ad val. * * *

Before we proceed to consider the evidence, we touch on the briefs. The original ones filed by both sides, though able, dealt with completely different issues. This being perceived in chambers when drafting of a decision began, it was confidently expected that plaintiff would request permission to file a reply brief, and the court's work was suspended. The request was duly forthcoming and the reply brief is in hand. The Government then requested permission to file a surreply brief, which was denied. Briefs are to aid the court. They fail to do so if they do not argue the affirmative and negative sides of the issue the parties deem significant. The court, therefore, needed the reply brief. The same was not felt to be true of the proposed surreply. After issue is properly joined, as it was here, succeeding rebuttal or supplementary briefs normally serve more to relieve the anxieties of counsel than to help the court. Awaiting them may delay the final decision unless the judge responsible for the opinion is badly backlogged. Counsel on both sides, who practice frequently in this court, often request extensions for filing of original briefs; it comports badly with such requests to seek to pile up needless reply briefs in cases already adequately briefed. There is no sacred rules that both sides must have the same number of briefs received; the court may and will stop the briefs whenever it thinks it has received help enough.

The evidence of the single witness was directed to establish that the merchandise consisted of two-man, four-man, and six-man inflatable rubber boats. He testified that he had been in the business of buying and selling pneumatic liferafts since 1946, and that he developed the "motor mount" with rope attachments and two special grommets in the hull, as in protest 64/19163. The mounts were wood. The next model had reinforced sections on the stern with straps to support the mount. (Protest 64/1011.) The hulls have compartments for flotation in case of leakage. Protests 64/1012 and 64/19163 involve a wood and metal mount for a heavier motor. The exhibits show that the hull is that of the familiar small inflatable raft which, except for the motor modifications, resembles that which has been employed as emergency life saving equipment on aircraft and vessels for some years. See account of somewhat larger life saving rafts of this type in *Thornley & Pitt et al.* v. *United States*, 48 Cust. Ct. 134, C.D. 2325. In that case, the articles apparently had no attachments or adaptations for use with outboard motors, and classification under paragraph 370 as "motor boats" was claimed but not seriously pressed. They were held to be "vessels" not subject to duty under any provision of the tariff act and so duty free, even though they arrived as cargo. In

*Healthway's, Inc., et al.* v. *United States*, 52 Cust. Ct. 210, C.D. 2462, smaller rafts of similar type with adaptations for use with outboard motors were held to be "motor boats" even though imported without motors. The record herein reflects that the collector declined to follow the *Healthway's* case because the adaptations for mounting outboards were different. The testimony herein was mostly focused on convincing the court that the mountings were *bona fide* and practicable for use. The Government, wisely we think, now proclaims itself satisfied that the imports are "motor boats." Thus the issues litigated in *Healthway's* are not now before us. The concession makes any extended analysis of the testimony unnecessary, and, therefore, our usual detailed summary has been curtailed.

The Government's sole argument now is that the plaintiff did not prove that the merchandise was "pleasure boats" not "used or intended to be used in trade or commerce," and this being a necessary element for classification under paragraph 370, it says the claim under that paragraph must fail. The protests assert no other.

The record and exhibits suggest that the boats, with motors, are used for pleasure, on beaches and lakes. Plaintiff deals in camping and sporting goods. The boats are sold to outlets such as Klein's and Sears Roebuck. However, if plaintiff was really required to prove that the articles were "pleasure boats" not "used *or intended* to be used in trade or commerce," and to prove it dehors the "potent" witness of the articles themselves, it has to be said at once that plaintiff has not done so. Plaintiff, first apprised of this supposed flaw in its case by defendant's brief, attempts to show that legal limitations on the use of such foreign built boats would make commercial uses impossible. They are barred from coasting trade and the fisheries, 46 U.S.C., section 11. The argument, though helpful, we do not regard as conclusive: It is possible an illegal use of rubber boats, as e.g., clandestine transportation of heroin across the Rio Grande, might be considered a use in trade or commerce. The fact certainly is, however, that a person could not blithely carry on trade or commerce in an inflatable rubber boat in total disregard of legal limitations pertaining, as e.g., for safety of life, and this fact would have to be considered, with other facts, in determining whether the boat, as imported, was "intended" for use in trade or commerce.

The Government admits that, in the *Healthway's* case, the plaintiff was not required to show, and did not show, that the boats there involved were pleasure boats not used or intended to be used in trade or commerce. It says this is not *stare decisis* because the issue was not placed before the court, citing *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 15 Cust. Ct. 83, C.D. 949, rehearing denied 15 Cust. Ct. 325, Abstract 50684. Still we do not think that the omission of counsel

and court to consider an issue is a fact wholly devoid of significance. But in three earlier cases under paragraph 370 involving small motor boat hulls imported, as here, without motors, the original papers (happily still available), show that trouble was taken in each case to put in the record direct statements that the intended use was purely for pleasure. *William M. Barber et al.* v. *United States*, 6 Cust. Ct. 340, C.D. 492; *Robert E. Landweer* v. *United States*, 23 Cust. Ct. 171, Abstract 53576; *A. W. Fenton Co.* v. *United States*, 15 Cust. Ct. 200, C.D. 972. In two of the three cases, questions from the bench developed the information, showing that judges, who operated closer in time than we do to the enactment of the legislation involved, thought that a proper record on the point might be needed. On the whole, we are willing to consider the issue as the Government poses it, with no direct guide from judicial precedent, reported or unreported.

To resolve the question, we deem it necessary to consider the background and purpose of paragraph 370. This is given in detail in *United States* v. *William Herman Wepner*, 32 CCPA 30, C.A.D. 282, to which we refer. The language here to be construed first saw the light of day in a conference report, 69 Congressional Record, part 4, page 9854, but the purpose of the variations in language from the Senate amendment, set forth in *Wepner*, at page 38, was never disclosed in debate or otherwise. Under paragraph 370, Tariff Act of 1922, motor boats strictly so called were designated *eo nomine* and dutiable, whether intended for pleasure or commerce. *David B. Roberts* v. *United States*, 17 CCPA 215, T.D. 43653. But other craft were thought subject to duty only if imported as cargo; if they arrived floating on their own bottoms they were exempt, under the doctrine of *The Conqueror*, 166 U.S. 110. In 1926, a tax was levied on use of foreign built pleasure craft in United States waters, but this was obnoxious to the German Republic for reasons the court in the *Wepner* case could not ascertain. In 1928, therefore, paragraph 370 was amended to its present form to meet these objections. The Congress sought to enlarge the previous paragraph 370 in two major respects: (a) make sail and steam yachts and pleasure boats dutiable the same as motor boats regardless of length or tonnage, and (b) to eliminate any loophole based on mode of arrival. But on the other hand, motor boats built or contracted for before December 1, 1927, and those used or intended to be used in trade or commerce were now exempted. A boat exempted under the first exemption would be duty free, the court held in *Wepner, supra*, not dutiable under any other tariff provision. Doubtless the same would be true of a motor, sail, or steam vessel covered by the second exemption, that is, used or intended to be used in trade or commerce. *Consolidated Water Power & Paper Company* v. *United States*, 23 Cust. Ct. 65, C.D. 1192.

Thus there seems to be some weight to plaintiff's suggestion that, if the motor boats concerning us here are used or intended to be used in trade or commerce, they are duty free. *Thornley & Pitt et al., supra.* The writer of this opinion, speaking for the Bureau of Customs, differed from the above decision in T.D. 55703, which restricted it to the merchandise before the court, but there can be no doubt, and none was expressed in T.D. 55703, that a vessel, not a "motor boat" under the amended definition, which arrived on its own bottom, not as cargo, would be duty free. This was the situation on which the Congress focused its attention in amending paragraph 370, and one that must be considered in construing the exemption for yachts and boats engaged or intended to be engaged in trade or commerce.

The paragraph, taken as a whole, appears to command a duty based on type, as the operating terms "yacht or pleasure boat" refer to recognized types which can usually be identified when seen regardless of actual employment. No one would call a tug boat a yacht, although it is perfectly possible for a tug boat to be documented and used as a yacht. People, however, vary widely in their use of these and just about all nautical terms. Dutiability thus based, though vaguely, on type, is clarified by an exemption based on use. It seems reasonable to suppose that use "in trade or commerce" does not include all uses for the pecuniary advantage of the owner, e.g., use of a yacht owned by a corporation to entertain the corporation's customers. It means use as an instrumentality or vehicle of trade or commerce, as to carry cargo or passengers. Thus it operates in *pari materia* with 46 U.S.C., section 103, under which a vessel having a yacht license may not "transport merchandise or carry passengers for pay." Not all yachts or craft of yacht type are licensed as yachts, so this provision of paragraph 370, so interpreted, is not mere surplusage. Moreover, without this limitation, paragraph 370, as amended, might have been construed to assess duty on some of the vessels owned by United States citizens, foreign built, and operated under foreign flags (now known as "flags of convenience") to carry passengers and cargo into and out of United States ports. Not everyone, then or now, approves of this, but it presents an intricate problem the Congress would not wish to legislate about by inadvertence while it was focusing on the wholly distinct problem of the importation of foreign built pleasure craft. Thus, if the exemption of vessels used or intended to be used in trade or commerce is limited to those used or intended to be used as carriers or instrumentalities in such commerce, the apparent purpose of the Congress in granting the exemption is served, and the exemption is not extended to situations where no rational reason for exemption appears, as e.g., the corporate yacht. At any rate, once it is clearly seen that the provision relating to use in trade or commerce conferred an exemp-

tion, it will be apparent that the Congress did not intend revenue officers to apply it in ambiguous situations, nor should the court.

The instant merchandise, and that in *Healthway's; A. W. Fenton;* and *Robert E. Landweer, supra,* all consists of motor boats we may confidently assume are under 5 net tons each. Therefore, they could not be licensed or otherwise documented, either as yachts or in any commercial category. Customs Regulations of 1954, section 3.2, 3.4. In view of the policy of the Navigation Laws, title 46, U.S.C., and the system of stringent regulation, therein set up, it would appear to follow that vessels of under 5 net tons are viewed as of negligible importance in commerce. Certainly a vessel lacking documentation would be handicapped, to say the least, in carrying on commerce.

The words *"used or intended to be used* in trade or commerce" require construction. This is not the ordinary use classification terminology and the familiar customs "chief use" jurisprudence is inapplicable. "Used" would seem to mean the vessel is actually in use when it arrives in United States waters, as a vehicle of trade or commerce. "Intended to be used" then would mean the owner's actual intentions, and it might also mean dedicated to trade or commercial use in its design characteristics, if no actual intention appeared. Considerations of the chief use of the class or kind prevailing over the actual use of the very merchandise to be classified would seem wholly inapposite here.

Boats imported as cargo to be resold manifestly are not imported while in actual use for trade or commerce. The importer's intention is to sell, not use for any purpose. If he ever entertains an intent that they be used for trade or commerce, it could only be when their characteristics displayed a predominant suitability for such use, over a pleasure use. This could not be said, we believe, of the merchandise herein, as described in the evidence. It is true that it might be carried as safety equipment on vessels or aircraft operating in commerce. This we believe is not a use of the inflatable boat as itself an instrumentality of commerce. The same is true of military uses. Other imaginable uses are even less plausibly commercial, except use for smuggling, but we hope it will not be suggested that smuggling is other than fugitive.

To establish a claimed classification, we require that every fact necessary for that classification be proved by the importer, even negatives. *Wah Shang Company* v. *United States,* 44 CCPA 155, C.A.D. 654; *Lador, Inc.* v. *United States,* 48 CCPA 6, C.A.D. 753. However, we do not require oral testimony when the article itself as a "potent witness" establishes the fact with but a negligible possibility of error. *John S. Connor, Inc.* v. *United States,* 54 Cust. Ct. 213, C.D. 2536. In *Thayer* v. *United States,* 2 Ct. Cust. Appls. 526, T.D. 32252, the

court noticed that a racing shell for the Harvard crew could not operate as a "vessel." In *The Conqueror, supra*, the court took notice that canoes and other small undocumented boats are "ordinarily used for purposes of pleasure," pages 117, 118.

Finally, assuming the imported article is not used or intended to be used in trade or commerce, must plaintiff's protest fail because it has also not proved that the article is not a "pleasure boat"? The two concepts do not necessarily match: the strict interpretation we have given to the exemption for boats used or intended to be used in trade or commerce leaves it open that some uses not for trade or commerce might also not be for pleasure: as safety equipment as aforesaid, or for military purposes.

The answer lies in paragraph 370, as enacted, which continues the preexisting duty on "motor boats" and says that:

> * * * The term "motor boat," * * * *includes* a yacht or pleasure boat, regardless of length or tonnage, whether sail, steam or motor propelled * * *. [Italics supplied.]

The word "including" is frequently found in tariff terminology following an *eo nomine* designation and followed by more specific enumerations. Thus paragraph 1547 (a) covers "Works of art, including (1) paintings * * * (2) statuary, * * *." In *F. Lunning, Inc., et al.* v. *United States*, 39 Cust, Ct. 271, C.D. 1941, it was held that paragraph 1547 (a) covered works of art other than paintings and sculpture. The word "including" has various tariff meanings depending on context but the one thing it never means is that the generality of the language preceding it is limited to the specifics that follow. Cf. *United States* v. *Kimball Dental Mfg. Co.*, 19 CCPA 353, T.D. 45501; *Jaeger's Sanitary Woolen System Co.* v. *United States*, 11 Ct. Cust. Appls. 181, T.D. 38962; *Carlowitz* v. *United States*, 2 Ct. Cust. Appls. 172, T.D. 31681. The *Jaeger* case, *supra*, points out at page 183 it may mean "also" when the words after "including" add something not naturally within the meaning of the words that precede. Since steam and sail propelled craft are not motor boats, it is clear that "includes" means "includes also" in paragraph 370.

Thus it would seem to follow that paragraph 370 covers *all* motor boats not excluded by the exemptions already discussed, and *also* steam and sail craft not so excluded to the extent they are yachts or pleasure boats. The legislative history indicates, as already shown, that the Congress wished to broaden paragraph 370, bringing under it things not previously covered. There was no reason why the scope of the previous paragraph 370 should be contracted except for the exclusions specifically provided. Under the previous paragraph 370, the dutiability of motor boats had not depended on their being yachts or pleasure boats. Thus, the imported boats here involved, for para-

graph 370 classification, were not required to be shown to be "yachts or pleasure boats"; it was enough that they were not used or intended to be used in trade or commerce. Therefore, the protests must be sustained.

The protests are sustained and the merchandise is held properly dutiable at 5 per centum ad valorem under paragraph 370 of the Tariff Act of 1930, as modified by T.D. 55615, *supra*, as motor boats.

Judgment will be rendered accordingly.

### CONCURRING OPINION

OLIVER, Judge: I concur in the result reached by the majority herein on the basis that there has been a *prima facie* showing that said boats are used for pleasurable pursuits.