**460**

The **NEWMAN CO.** et al.

v.

**UNITED STATES.**

**C.D. 3838; Protest Nos. 61/24787–64984, etc.**

United States Customs Court,
First Division.
June 3, 1969.

Before WATSON, MALETZ, and RE, Judges.

RE, Judge:

In these eighteen protests, consolidated for purposes of trial, plaintiffs seek to recover a portion of the duties paid upon certain merchandise invoiced as 2-man or 4-man rubber boats, without motor, with 2 metal valves and two motor mount ropes. The merchandise, consisting of inflatable rubber boats with compartmentation and construction to withstand motor boat speed, was classified as "Manufactures of india rubber * * * not specially provided for" under paragraph 1537(b) of the Tariff Act of 1930, as modified, T.D. 53865, and assessed with duty at 12½ per centum ad valorem.

Plaintiffs claim that the merchandise is properly dutiable at 6 per centum ad valorem as "Motor boats: Valued not over $15,000 each" under paragraph 370 of the Tariff Act of 1930, as modified, T.D. 54108. Plaintiffs also alleged that the protests in this case "cover 2-man and 4-man rubber motor boats without motor but with motor mount ropes the same in all material respects" to the merchandise in the case of The Newman Company v. United States, 57 Cust.Ct. 117, C.D. 2739 (1966). Consequently, they maintain that the *Newman Company* case, decided by this court in 1966, because of the doctrine of *stare decisis*, is dispositive of the present litigation.

The defendant contends that the *Newman Company* case relied upon is not *stare decisis* of the issues herein since the merchandise in that case "differs

completely from the merchandise here in litigation." The defendant has only conceded that the boats are valued under $15,000 each, (R.6)

The pertinent or competing statutory provisions may be set forth as follows:

Paragraph 1537(b), Tariff Act of 1930, as modified, T.D. 53865:

"Manufactures of india rubber or guttapercha, or of which these substances or either of them is the component material of chief value, not specially provided for  *  *  *:

\*     \*     \*     \*     \*     \*     \*     \*

Other ...............................12½% ad val."

Paragraph 370, Tariff Act of 1930:

"Airplanes, hydroplanes, motorboats, and parts of the foregoing, 30 per centum ad valorem. The term 'motor boat,' when used in this Act, includes a yacht or pleasure boat, regardless of length or tonnage, whether sail, steam, or motor propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yacht or boat is brought into the United States under its own power, but does not include a yacht or boat used or intended to be used in trade or commerce, nor a yacht or boat built, or for the building of which a contract was entered into, prior to December 1, 1927."

Paragraph 370, Tariff Act of 1930, as modified, T.D. 54108:

"Motor boats:
Valued not over $15,000 each ..................6% ad val."

———————◆———————

At the outset it should be noted, from the broadened statutory definition, that the absence of a motor does not prevent a boat from being classified as a motor boat. See United States v. Wepner, 32 CCPA 30, 34, C.A.D. 282 (1944), wherein the court noted that in legislatively defining the term "motor boat," Congress had "broadened its definition beyond the ordinary dictionary definitions of the term." See also Fenton Co. v. United States, 15 Cust.Ct. 200, C.D. 972 (1945), and Landweer v. United States, 23 Cust.Ct. 171, Abstract 53576 (1949).

The factual problem that gives rise to the conflict on the applicability of the doctrine of *stare decisis*, pertains to the presence or absence of "motor mounts" on the boats at the time of the importation. The defendant asserts that in the first *Newman Company* case, the record of which has been incorporated in the present case (R.15), the boats included a "wood motor mount," and that the court "was considering inflatable rubber boats with motor mounts." (Defendant's brief p. 4) It is pointed out that the court commenced its opinion by stating that "[t]he merchandise  *  *  * consists of pneumatic or inflatable rubber boats with motor mounts  *  *  *." 57 Cust.Ct. at 118. The court, in summarizing the testimony of Mr. William Newman, who is also the only witness in the present case, stated:

"The evidence of the single witness was directed to establish that the merchandise consisted of two-man, four-man, and six-man inflatable rubber boats. He testified that he had been in the business of buying and selling

pneumatic liferafts since 1946, and that he developed the 'motor mount' with rope attachments and two special grommets in the hull * * *. The mounts were wood." Id. at 119.

In the present case, Mr. Newman testified that the 2-man and 4-man boats were "the same" as in the prior case. (R.13, 14) Notwithstanding any doubt entertained by the defendant, it is clear from an examination of the purchase confirmations in the present case, and the testimony of the witness, that the boats contained "motor mount ropes" at the time of the importation. (R.8–12) The crucial difference, however, lies in the *wood motor mount* in addition to the motor mount ropes. Although the present importations included "motor mount ropes," they did not include the "wood motor mount."

Mr. Newman testified that exhibit 1 illustrated "a 2-man motor boat with motor mount ropes, two valves, and special grommets for attaching the motor mounts, and instructions for attaching the motor mount." (R.14) The instructions were included in all the boats and the 4-man boat "is similar, but it differs with respect to size. It is larger and has two inflatable seats rather than two fixed seats." (R.14) When asked how a motor would be mounted on a boat with only the motor mount ropes, he replied:

"You take some wood and you cut the wood with certain slits, following the instructions. After making the complete wooden mount, which you make separately, you attach it by use of the motor mount ropes. This anchors the wooden mount on to the midsection of the boat, and it balances the weight of the motor that is attached to the rear of the motor mount." (R.16–17)

Notwithstanding the statement of the witness that it was conceivable to attach a motor by the use of the ropes without a "motor mount," there can be no doubt, as gleaned from the witness' own testimony at the prior trial (I.R.8), that the ropes serve to "hold on a motor mount." (R.17–18) The motor mount ropes serve no function "other than to secure the wood motor mount." (I.R.8)

■ A careful reading of the record together with that of the incorporated case will reveal that the merchandise differs in the one respect herein indicated. Since the inflatable boats in this case, at the time of the importation, did not include "motor mounts," it cannot be said that the merchandise is "the same in all material respects" to the merchandise in the *Newman Company* case decided by this court in 1966. Plaintiffs are therefore in error in their contention that, because of the doctrine of *stare decisis*, the *Newman* case controls the decision of the case at bar.

In United States v. R. J. Saunders & Co., Inc., 42 CCPA 128, 136, C.A.D. 584 (1955) the court stated the fundamental philosophy which underlies the doctrine of *stare decisis*. Rather than to paraphrase a clear and succinct statement, the court, in the *Saunders* case, quoted the following statement from the brief for the Government:

"The doctrine of *stare decisis* rests on the underlying philosophy that any judicial statement, however broad, must be understood in its context, and as applying to the facts of the case. It is not to be expanded to embrace, as well, a factual situation other than, different from, and contrary to, the facts of the case to which the language applies and is used."

In Washington v. W. C. Dawson and Co., 264 U.S. 219, 236, 44 S.Ct. 302, 308, 68 L.Ed. 646 (1924), Mr. Justice Brandeis stated the proposition well when he said that:

"[t]he rule as announced must be deemed tentative. For the many and varying facts to which it will be applied cannot be foreseen."

■ The factual difference, however, of this case from the incorporated case, does not affect plaintiffs' right to have the merchandise properly classified. In the *Newman Company* case the court made the following reference to the case of Healthway's, Inc., et al. v. United

States, 52 Cust.Ct. 210, C.D. 2462 (1964):

"In Healthway's, Inc., et al. v. United States, 52 Cust.Ct. 210, C.D. 2462, smaller rafts of similar type with adaptations for use with outboard motors were held to be 'motor boats' even though imported without motors. The record herein reflects that the collector declined to follow the *Healthway's* case because the adaptations for mounting outboards were different. The testimony herein was mostly focused on convincing the court that the mountings were *bona fide* and practicable for use. The Government, wisely we think, now proclaims itself satisfied that the imports are 'motor boats.' Thus the issues litigated in Healthway's are not now before us." 57 Cust.Ct. at 119–120.

Hence, the court in the prior *Newman Company* case devoted its attention to the Government's sole argument that the plaintiff had not proven that the merchandise was "pleasure boats" not "used or intended to be used in trade or commerce" within the meaning of paragraph 370 of the tariff act. The court considered the "background and purpose" of paragraph 370 and noted that the legislative history indicated that "Congress wished to broaden paragraph 370, bringing under it things not previously covered." 57 Cust.Ct. at 124. Having found that the boats were not required to be shown to be "yachts or pleasure boats," and that it was enough that they were not used or intended to be used in trade or commerce, the court sustained the protests.

The defendant in its brief alludes to the rule that "the condition of the merchandise as imported controls its classification and not what it is made into after importation." (Defendant's brief p. 6)

The rule and its reason have been restated by Mr. Justice Hughes in United States v. Citroen, 223 U.S. 407, 414–415, 32 S.Ct. 259, 260, 56 L.Ed. 486 (1912):

"The rule is well established that 'in order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported.' Worthington v. Robbins, 139 U.S. 337, 341, 35 L.Ed. 181, 11 S.Ct. 581, [1891]; Dwight v. Merritt, 140 U.S. 213, 219, 35 L.Ed. 450, 11 S.Ct. 768, [1891]; United States v. Schoverling, 146 U.S. 76, 82, 13 S.Ct. 24, 36 L.Ed. 893 [1892]; United States v. Irwin, (C.C. A.2d C) 78 F. 799, 802 [1897]."

Mr. Justice Hughes advises that "[t]he inquiry must be—Does the article, as imported, fall within the description sought to be applied?" Ibid. See also Leonard Levin Co. v. United States, 27 CCPA 101, 105–106, C.A.D. 69 (1939).

The defendant would answer in the negative since "in their imported condition the boats at bar did not have the motor mounts as in the *Newman Company* case, *supra,* but that in order for them to be in a similar condition to receive a motor *after importation* a motor mount had to be made of wood and then attached by means of the motor mount ropes (R.16). It is *only after* this complete motor mount is attached that the boat will be in condition to receive the motor itself." (Defendant's brief pp. 6–7) Admittedly the boats are in all other respects "the same."

In view of the apparent similarity of the boats in question to those in the *Healthway's* case, the court has also examined the illustrative exhibit in that case. The defendant suggests that the boats in the case at bar "are unlike" those in the *Healthway's* case. Three kinds of boats, known as the Inka, the Poseidon and the Neptune II or "River," were involved in the *Healthway's* case. The Inka and Poseidon are equipped with "motor mounts, that is, tubular parts that adhere to the boat itself at various points around the rim * * *. The motor mounts serve the sole purpose of receiving steel tubes which support the

motor— 'the motors are mounted on the boats in the places provided on the boats for the installation of certain tubular steel parts, and *in the back of the two particular boats there is an opening where the motor is placed on the boat.* Particularly, these motor mounts are put there for the purpose of installing a motor.'" Healthway's, Inc., et al. v. United States, 52 Cust.Ct. at 212. [Emphasis in original.]

Even more significant is the statement that follows the previous quotation: "The boats are also equipped with oarlocks, but no oars, steel tubes, or motors accompany the importation." Ibid.

After an examination of the authorities which dealt with the broadened "statutory definition" of motor boats, the court concluded:

"The Poseidon and Inka boats here involved have been shown to satisfy that test. They are made in compartments to prevent deflation; there is an opening in the stern for the placement of a motor; and *there are mounts on the sides to accommodate the motor supports.*" Id. at 215. [Emphasis added.]

Hence, even without the "steel tubes" or "motor supports," the court, in the *Healthway's* case, held the inflatable boats, Inka and Poseidon, to be motor boats within the purview of paragraph 370 of the Tariff Act of 1930.

As for the Neptune or "River" boat, there was no evidence to show that "as imported, [it] is even equipped to accommodate a motor." Id. at 213. This boat, said the court, "is a kayak or canoe-type inflated boat. Its bow and stern are both pointed and do not appear to afford any space for the attachment of a motor. The exhibit shows no 'motor mounts' for the insertion of the tubular steel motor braces * * *." Ibid. The protest as to the Neptune, was therefore overruled. On the crucial issue of "motor mounts," a careful examination of the exhibits in the *Healthway's* case reveals that what was said by the court about the Poseidon and the Inka can be said of the

importations herein: " * * * there are amounts on the sides to accommodate the motor supports." Id. at 215.

Structurally and functionally, there is a distinction between the motor mounts and the motor supports. The mounts serve to accommodate the motor supports which in turn accommodate the motor. Although there are no supports (wood motor mount) included with the present importations, neither were there *supports* (steel tubes) in *Healthway's*. Notwithstanding the absence of the tubular steel parts, which support the motor, the court nevertheless held the Poseidon and the Inka to be motor boats within the intendment of paragraph 370 of the Tariff Act of 1930. All that the court required was the presence of *bona fide* "mounts * * * to accommodate the motor supports."

Although some confusion has resulted from the various meanings attributed to the word "mount," it is clear that the "metal valves" and "motor mount ropes" in the present case, are designed to serve the identical function as the "mounts" in the *Healthway's* case. Notwithstanding the difference in structure and design, the disputed element of a *mount* or *mounting* is equally present in both cases.

In view of this finding, there can be no doubt that plaintiffs are entitled, as a matter of justice, to have the standard applied in *Healthway's* also applied to the importations in this case. The *Healthway's* case, in effect, held that the condition of the merchandise at the time of the importation was sufficient to qualify within the broadened statutory definition of motor boat in paragraph 370 of the Tariff Act of 1930. It is not only the desire to attain uniformity, but also the determination to do justice that require that the rule of the *Healthway's* case be applied here.

In view of the foregoing, the presumption of correctness of the collector's classification herein is deemed to be overcome, and the protests are consequently sustained. Judgment will issue accordingly.